- JAMES L. ADAMS *et al.*

*v.*

EDWARD STURGES, SENR. *et al.*

1. PARTNERSHIP—*application of funds of a firm, and those of individual members of a firm.* It is a uniform rule that partnership property shall be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm, and that the creditors of the latter should be first paid from the separate effects of the debtor before the partnership creditors can claim anything.

2. So where an individual member of a firm deposited with a creditor of the firm a promissory note belonging to the former, as collateral security for a particular debt owing by the firm to such creditor, and afterwards paid that debt, the party so depositing the collateral may recover the proceeds thereof, the creditor receiving it having in the mean time collected the same, notwithstanding there may remain other unadjusted claims due from the firm to such creditor, the firm being solvent at the time, and the separate property of one partner not being liable to be taken, in the first instance, to satisfy partnership debts.

3. SALE OF STOCKS—*in hands of an agent.* The owner of certain shares of stock in an insurance company, placed them in the hands of a person who was a member of a partnership firm, and gave him a power of attorney to sell them. The stocks were transferred, for convenience, by this agent to the firm of which he was a member, and upon the question whether the firm had appropriated them to their own use so as to render them liable to to the owner therefor, as in case of a sale, it was *held,* upon the facts, there was no such appropriation, the firm, as such, never having had anything to do with the stocks, the transfers to and from the firm being the transactions of the individual partner, alone, who held the power of attorney.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Chief Justice, presiding.

The opinion states the case.

Messrs. WALKER, DEXTER & SMITH, for the appellants.

Mr. JAMES L. STARK, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

In 1869 appellees filed a bill in chancery, to compel appellants to account for one hundred shares of stock of the Ohio Life Insurance and Trust company.

In 1855 appellants were engaged in business in the city of New York, and appellees in Ohio.

The stock in controversy was sent in 1855, accompanied by the following letter and power of attorney:

"MANSFIELD, July 20, 1855.
*Messrs. Adams & Buckinghams:*
GENTS: We herewith hand your Mr. Brown, Prest's draft on the Ohio Life Insurance and Trust Company, N. Y. for $248.94, which please place to our credit, and oblige,
Very respectfully, yours, etc.
E. P. & E. STURGES."

" We also send herewith certificate for one hundred shares of Ohio Life Insurance and Trust Company stock, owned by us, and power of attorney for your Mr. Buckingham to sell and transfer the same, which you will oblige us by doing to the best advantage, when you can do so at par or over, but not at less than par.
E. P. & E. STURGES."

" When you sell the Trust Company stock, please place the proceeds to our credit.
E. P. & E. STURGES."

"Know all men by these presents, that we, E. P. & E. Sturges, of Mansfield, Ohio, do hereby constitute and appoint John Buckingham, of New York city, our lawful attorney, for us and in our name, to sell, transfer and assign one hundred shares of the capital stock of the Ohio Life Insurance and Trust Company, standing in our names on the books of said company; with power also, an attorney or attorneys under him for that purpose, to make and substitute with like power, and to do all lawful acts requisite for effecting the premises, hereby ratifying and confirming all that my said attorney or his substitute or substitutes shall do therein, by virtue of these presents.

In witness whereof, we have hereunto set our hand and seal, this twentieth day of July, A. D. 1855.

E. P. & E. STURGES. [*Seal.*]"

The following was the reply:

"NEW YORK, July 23, 1855.

*Messrs. E. P. & E. Sturges, Mansfield, Ohio:*

Yours of the twentieth is received, with inclosures, as stated. We credit you under date. M. Brown, P. B. on Ohio Life Insurance and Trust Company, $248.94. Certificate one hundred shares O. L. I. & T. Co. received; will attend to the sale as directed; it is fluctuating; last sold five shares, c $100.

ADAMS & BUCKINGHAMS,

Per E. A. BEIDEN."

In September, 1857, appellants failed in business, and made an assignment for the benefit of their creditors. Prior to their failure, in July or August, 1857, the Ohio Life Insurance and Trust Company ceased to do business, and has not since opened books for the transfer of stock.

At the time of the assignment, appellees, and also the firm of E. Sturges, Sr. & Co. had claims against appellants, exclusive of the stock in the insurance company. The amount of this indebtedness was agreed upon, and arrangements were made to

secure it.   Finally, Ebenezer Buckingham, one of appellants, secured the claims, by depositing, as collateral security, the notes of one Hart.   This was done in 1862.   The notes were the individual property of E. Buckingham.

A good deal of correspondence ensued between the parties, but no mention was ever made of the stock until 1862, about five years after the failure.   During the year 1867 we find the following letter:

"MANSFIELD, June 29, 1867.

*E. Buckingham, Esq. Chicago:*

DEAR SIR:   We send by the bearer, S. B. Sturges, Esq. a statement of Messrs. Adams & Buckinghams' account with E. P. & E. Sturges, and due July 1, 1867, $6,435.09.   Also statement of Messrs. Adams & Buckinghams' account with E. Sturges, Sr. & Co. amount due September 1, 1866, $2286.79, which accounts you will oblige us by settling with him.

Very respectfully, yours, etc.

EDWARD STURGES, SR.

Surviving partner of the firm of E. P. & E. Sturges.

E. STURGES, SR. & Co.

E. Buckingham wrote, in reply, that he had paid the claim of E. Sturges, Sr. & Co. and $2500 on account of the claim of appellees.   In this letter, of date July 11, 1867, E. Sturges, the surviving partner, was informed that appellants had the one hundred shares of stock, and were ready and willing to make a proper transfer of them.   No reply was made, and on the thirtieth day of January, 1868, E. Buckingham again wrote, to the same effect.   Sturges replied that they would not accept the shares offered, in place of those sent in 1855, and that he desired to know relative to any transfer of the stock, and the use which had been made of it.

These facts show a very remarkable and almost stolid indifference, on the part of appellees, in relation to this stock.   In 1855 it was forwarded for sale.   The insurance company failed

472          ADAMS *et al. v.* STURGES *et al.*          [Sept. T.,

Opinion of the Court.

in 1857, and appellants made their assignment in the same year, with the knowledge, and express assent, of appellees.

The indebtedness between the parties, excluding the stock, was adjusted. Five years elapsed before any demand was made for the certificate of stock, or even a whisper was heard as to its value, or any pretense of claim was set up against appellants. Tested by the known motives which prompt human action, this conduct of appellees is indeed marvelous, upon the hypothesis that they thought they had a valid claim against appellants for this stock.

In 1868 E. Buckingham paid the indebtedness to the two firms, as agreed upon. Prior to this the Hart notes had been placed in the hands of one Charles M. Sturges, an attorney, for collection. He retained the sum of $9795.59, and refused to pay it to E. Buckingham, for the reason that appellees claimed that the notes were deposited as collateral security for any amount which might be due to them from appellants, upon a final settlement. The evidence is perfectly satisfactory that the notes were not deposited for such purpose, or under such arrangement. They were merely security for the debt which had been discharged. The money in the hands of Charles Sturges, then, belonged to E. Buckingham.

He commenced a suit for its recovery, and appellees then filed this bill to enjoin the prosecution of the suit, and for an accounting.

We are satisfied that the proceeds of the notes in the hands of Charles Sturges belonged absolutely to Ebenezer Buckingham, after the payment of the debt to secure which they were deposited as collateral. There is no averment in the bill of the insolvency of the firm of Adams & Buckinghams at this time, or of their inability to pay the amount claimed by appellees. It is a just and uniform rule that the partnership property shall be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm, and that the creditors of the latter should be first paid from the separate effects of the debtor before the partnership creditors can claim

anything. No reason, whatever, is assigned in the bill why the separate moneys of Ebenezer Buckingham should be taken, in the first instance, for the payment of the debt of the firm. The injunction should never have been issued.

It has been argued that there was an appropriation of stock by appellants, and that they concealed such appropriation for years. The evidence of concealment is slight, indeed. There were about seven years between the time when the stock was sent for sale and the time when any investigation commenced. The failure of the insurance company must have been known to appellees. If the stock had been forgotten, entirely, this would revive a recollection of it. Yet five years elapse before any inquiry is made. The conclusion is almost irresistible, that the claim was regarded as worthless.

Who was entrusted with this stock and authorized to effect a sale? Was there an unlawful conversion by appellants?

It is manifest that the fair construction of all the writings is, that John Buckingham was the person in whom the confidence was reposed. He, alone, was empowered to sell and transfer, and to make substitution. If it was intended to give power to the firm to sell, why was not the firm name of appellants inserted? John Buckingham resided in Connecticut. The firm was engaged in business in New York. If the authority had been conferred upon the firm, either one of the four members could have acted. Yet one only is selected. He, alone, was confided in. His judgment alone was trusted in the management of the business.

The conduct of the parties sustains this view. For the sake of convenience the stock was transferred, and placed in the name of appellants. This the attorney had the right to do. At the time of the failure of appellants, it was found in their safe, in the private drawer of John Buckingham. Upon inquiring into the facts, the assignees handed the stock to him, and it was not regarded as assets of the firm. It has remained ever since in the possession of John Buckingham.

474 ADAMS *et al. v.* STURGES *et al.* [Sept. T.,

Opinion of the Court.

Have appellants been guilty of a conversion or misappropriation of the stock? John Buckingham, as he had the lawful right to do, transferred the stock to Corning & Co. brokers, for the purpose of sale. There were various transfers and re-transfers, from 1855 to 1857, between Corning & Co., Adams & Buckinghams and Winslow, Lanier & Co. During the greater portion of this period, and at the time of the failure of the insurance company and of appellants, there stood on the stock books of the company, one hundred shares of stock in the name of Adams & Buckinghams. There is no sufficient evidence of misapplication by them, of any wrongful act, of any profits made, or of any sale.

In the case of *Parsons* v. *Martin*, 11 Gray, 111, cited by appellees, the defendant was only authorized to sell certain shares of stock. The instruction was, that if he sold and received the price of the shares, he was liable for the proceeds of the sale. The proof was that there was a transfer to a third person. The court held that the transfer had a tendency to show a sale, and if wholly unexplained, the jury were justified in inferring an actual sale; that having authority only to dispose of the shares to a purchaser, the transfer must import a sale, if the transaction is not accounted for; that the omission to produce evidence in elucidation, affords strong presumption against him; that a sale of the stock for his own purposes was tortious; and hence, that the unlawful conversion, thus proved, could not be defended by proof that he had other shares of stock in the same company, of equal value.

In this case, there is no evidence of a sale by appellants, or of any transfer to or by them, with their knowledge or consent, unless the firm is chargeable with the acts of John Buckingham, the attorney. There was no tortious mixture of this stock with their own, so that a separation could not be made. The bookkeeper of appellants testified, positively, that Adams & Buckinghams, at the time of their failure, and for months previous thereto, did not own any of this stock, or have in their possession, as appeared from their books, any of it belonging

to any other person. The clear preponderance of the evidence is, that appellants, as a firm, never had anything to do with this stock, and that the several transfers to and from Adams & Buckinghams were transactions of John Buckingham, alone.

The alleged breach of trust is most positively denied, and not sustained by the proof. The decree is reversed, and the bill dismissed without prejudice.

*Decree reversed.*